UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

KEVIN H. LONGINO,
    Plaintiff,

vs.

CITY OF CINCINNATI,
    Defendant.

Case No. 1:12-cv-424

Litkovitz, M.J.

ORDER

Kevin Longino, proceeding pro se, brings this action against defendant the City of Cincinnati (City) alleging the City discriminated and retaliated against him on the basis of his race and his disability in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* (Title VII) and the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.* (ADA). Plaintiff also raises a state law claim of intentional infliction of emotional distress. This matter is before the Court on the City's motion to dismiss plaintiff's amended complaint (Doc. 18) and plaintiff's response in opposition and motion to strike. (Docs. 25, 26).[1]

### I. Background and Factual Allegations

Plaintiff's amended complaint alleges the following facts. Plaintiff is an African American male who has been employed by the City as a "Civil Engineering Tech 2" since 1989. (Doc. 11, ¶¶ 7, 9, 106). In September 2000, plaintiff was injured in an automobile accident during work hours; plaintiff required multiple surgeries as a result of his injuries. *Id.* at ¶¶ 10-11. Plaintiff's injuries resulted in a 30% disability and he received worker's compensation benefits. *Id.* at ¶¶ 12, 14. Due to these injuries, plaintiff requires certain work accommodations, including a change in work location, leave time for medical purposes, and a special chair. *Id.* at ¶ 15. The City is aware of plaintiff's injuries and disability. *Id.* at ¶ 16.

---

[1] Plaintiff's response in opposition and motion to strike were entered as separate docket entries but are identical documents.

The City has a transfer pay policy that provides additional compensation to employees who perform job duties not included in their job description and permits transfer and promotion to different positions without examination. *Id.* at ¶¶ 17-18. The City also has a flex policy which permits employees to work on a flexible schedule for certain reasons with permission by the Superintendent; however, employees are required to be on duty the core hours of 9 a.m. to 3 p.m. *Id.* at ¶¶ 20-21.

In 2006, plaintiff and the City entered into an agreement regarding plaintiff's request for flex time due to his injury. *Id.* at ¶ 23. The City later sought to dissolve the agreement and a controversy ensued. *Id.* at ¶ 24. Further, plaintiff did not receive transfer pay that he was entitled to and he consequently filed grievances with his union against the City and with the Equal Employment Opportunity Commission (EEOC). *Id.* at ¶ 19. Plaintiff alleges he took an examination for a promotion and passed; the exam was later re-graded; and plaintiff received a failing score. *Id.* at ¶ 25. Plaintiff's numerous requests for continuing education classes have been denied. *Id.* at ¶ 26. Plaintiff alleges the City did not promote him on the basis of his race. *Id.* at ¶¶ 126. Plaintiff further alleges that he was asked to evaluate a new work-efficiency system and refused because he believed the City was attempting to humiliate him; only black employees were asked to evaluate the system. *Id.* at ¶¶ 161-63.

Plaintiff also claims that he was retaliated against by former City employee Diane Frey for objecting to Ms. Frey's suggestions regarding an internal office party. *Id.* at ¶¶ 138-41. Plaintiff alleges Ms. Frey treated him in a condescending manner and attempted to humiliate him in a meeting by requiring him to read out loud, believing that plaintiff would have trouble reading on the basis of his race. *Id.* at ¶¶ 141-42.

Plaintiff filed a discrimination charge with the EEOC asserting that the City discriminated

against him on the basis of his race and disability. *Id.* at ¶ 27.

## II. Standard of Review

Rule 12(b)(6) authorizes dismissal of a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a Rule 12(b)(6) motion to dismiss, plaintiff's complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). Furthermore, the plaintiff must provide in the claim "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (citing *Twombly*, 550 U.S. at 555).

It is well-settled that a document filed pro se is "to be liberally construed" and that a pro se complaint, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers. . . ." *Erickson v. Pardus,* 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble,* 429 U.S. 97, 106 (1976)). However, the Sixth Circuit has recognized the Supreme Court's "liberal construction" case law has not had the effect of "abrogat[ing] basic pleading essentials" in pro se suits. *Wells v. Brown,* 891 F.2d 591, 594 (6th Cir. 1989). Courts are not required to devote time to a case when the nature of a pro se plaintiff's claim "defies comprehension." *Roper v. Ford Motor Co.*, No. 1:09cv427, 2010 WL 2670827, at *3 (S.D. Ohio April 6, 2010) (Report & Recommendation), *adopted,* 2010 WL 2670697 (S.D. Ohio July 1, 2010) (citing *Jones v. Ravitz*, No. 07-10128, 2007 WL 2004755, at *2 (E.D. Mich. July 6, 2007)).

Additionally, a court may consider exhibits attached to the complaint or motion to dismiss under certain circumstances. *Amini v. Oberlin College,* 259 F.3d 493, 502 (6th Cir. 2001) (citing

3

*Nieman v. NLO*, Inc., 108 F.3d 1546 (6th Cir. 1997)). Though, generally, a court may not consider matters outside of the pleadings when ruling on a Rule 12(b)(6) motion without converting it into a Rule 56 motion for summary judgment, "[d]ocuments that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to [his] claim." *Weiner v. Klais & Co.*, 108 F.3d 86, 89 (6th Cir. 1997) (quoting *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993)).

**III. Resolution**

The City moves for dismissal of all of plaintiff's claims asserting that: (1) portions of plaintiff's Title VII and ADA claims must be dismissed because plaintiff failed to timely file a charge with the EEOC; (2) plaintiff's Title VII and ADA retaliation claims must be dismissed as they are not reasonably related to the EEOC charge filed by plaintiff; (3) plaintiff's racial discrimination claims regarding participation in the efficiency-system evaluation fail to state a claim under Title VII; (4) plaintiff's allegations regarding Ms. Frey fail to state a retaliation claim under Title VII; (5) plaintiff's allegations that he was retaliated against for filing a union grievance fail to state a claim under Title VII; and (6) plaintiff has failed to allege facts sufficient to state a claim for intentional infliction of emotional distress.

In response, plaintiff filed a "motion to strike defendant's motion to dismiss or in the alternative brief in opposition." (Doc. 25). However, plaintiff's filing asserts no basis for striking the City's motion; thus, it will only be construed as a response in opposition to the City's motion to dismiss. For the following reasons, the City's motion is granted in part and denied in part.

1. <u>Plaintiff's Title VII and ADA claims regarding events prior to November 29, 2010 must be dismissed</u>.

The City moves to dismiss plaintiff's Title VII and ADA claims resulting from alleged acts

4

occurring on or before November 29, 2010, asserting that claims based on conduct preceding this date are time-barred. (Doc. 18 at 6). In support, the City has attached plaintiff's EEOC discrimination charge,[2] dated September 23, 2011,[3] alleging race and disability discrimination. (Doc. 18, Ex. 1). In his response in opposition, plaintiff does not challenge the City's position regarding his Title VII claim but contends that, regardless, his ADA claims regarding pre-November 29, 2010 conduct survive as the ADA does not include an exhaustion requirement. (Doc. 25 at 4).

To bring a Title VII claim, a plaintiff must timely file a discrimination charge with the EEOC. *Alexander v. Local 496, Laborers' Int'l Union of N. Am.*, 177 F.3d 394, 407 (6th Cir. 1999). Title VII provides that the applicable statute of limitations begins to run from the date of "the alleged unlawful employment practice . . . ." 42 U.S.C. § 2000e-5(e)(1). The Sixth Circuit has explained Title VII's dual statute of limitations as follows:

> Usually, if the alleged discrimination occurred more than 180 prior to the plaintiff's filing of an EEOC charge, claims implicating these actions are barred. However, if the alleged unlawful practice occurs in a "deferral state," in this case Ohio, which has enacted its own laws prohibiting discrimination in employment, the plaintiff must filed suit within 300 days of the alleged discriminatory act.

*Alexander*, 177 F.3d at 407 (citing 42 U.S.C. § 2000e-5(e)). Here, plaintiff's claims arise from conduct occurring within Ohio, a deferral state, and Title VII's 300-day time period for filing EEOC charges applies. *See* 29 U.S.C. § 626(d)(2). This same exhaustion requirement applies to plaintiff's ADA claims. *See* 42 U.S.C. §§ 12117(a) and 2000e-5(e)(1); *Parry v. Mohawk Motors of Mich., Inc.*, 236 F.3d 299, 309 (6th Cir. 2000). Thus, plaintiff's Title VII and ADA claims are

---

[2] The Court may consider this evidence without converting the instant motion to dismiss into a motion for summary judgment as plaintiff's "Charge of Discrimination" is referred to in the amended complaint and is central to his claims. *Weiner*, 108 F.3d at 89.

[3] The City's motion provides that plaintiff filed his charges on September 27, 2011 (Doc. 18 at 5) and September 27, 2012. *Id.* at 6. However, a plain reading of the "Charge of Discrimination" provides that plaintiff made his filing on September 23, 2011. (Doc. 18, Ex. 1).

5

limited in time and scope to conduct occurring within the 300 days preceding September 23, 2011, the date he filed his EEOC charge. (Doc. 18, Ex. 1). Therefore, any allegations that the City violated plaintiff's rights under Title VII and the ADA based on conduct preceding November 29, 2010, *i.e.,* 300 days prior to the date the EEOC charge was filed, are dismissed.

Nevertheless, plaintiff argues that the ADA does not include an exhaustion requirement, citing to several out-of-district cases. *See* Doc. 25 at 4. The cases cited by plaintiff refer to Title II of the ADA which prohibits public entities from denying services and benefits to qualified individuals with disabilities. *See* 42 U.S.C. § 12132; *Carten v. Kent State Univ.,* 282 F.3d 391, 395 (6th Cir. 2002). Here, however, plaintiff has raised a Title I claim against the City, asserting that the City, as his employer, has discriminated against him and failed to make reasonable accommodations for him as a qualified individual with a disability since his September 2001 injury. *See* Doc. 11, ¶¶ 29-91. *See also Whitfield v. Tennessee,* 639 F.3d 253, 258 (6th Cir. 2011) (noting that Title I of the ADA applies to employment discrimination while Title II addresses 'public services,' and declining to determine whether Title II applies to employment discrimination).

Even if the Court were to make a finding of first impression that Title II of the ADA applies to employers, as plaintiff contends it should, the instant case contains no allegations from which the Court can reasonably infer that plaintiff has raised a Title II claim. First, plaintiff's amended complaint cites specifically to language from Title I of the ADA. *See* Doc. 11, ¶ 29 ("The [ADA] requires that an employer make reasonable accommodation to the known physical or mental limitations of an otherwise qualified individual with a disability, unless the employer can demonstrate that the accommodation would impose an undue hardship."). This language is almost a word-for-word recitation of Title I's discrimination provision. *See* 42 U.S.C. § 12112 (b)(5)(A). Second, the amended complaint relates solely to the City's alleged mistreatment of plaintiff in the

6

employment context. *See, e.g.,* Doc. 11, ¶¶ 36-41 (alleging that plaintiff's disability required accommodations such as medical leave time, transfer to a desk job, and a high back chair for office work). Third, plaintiff had not referenced Title II until he sought to dispute the City's contention in its dispositive motion that some of plaintiff's allegations were time-barred. Accordingly, the undersigned finds that plaintiff has alleged only Title I ADA claims and is therefore subject to the 300-day statute of limitations. *See Hunter v. City of Copperhill, Tenn.*, No. 1:09-cv-238, 2011 WL 5980292, at *6-7 (E.D. Tenn. Nov. 29, 2011) (plaintiff alleging facts which appeared to "mirror claims made pursuant to Title I" and made no reference to Title II until responding to dispositive motion was prohibited from proceeding with Title II claim).[4]

The Court recognizes that plaintiff asserts that *none* of his allegations are time-barred because he is alleging that the City's actions constitute an ongoing violation. *See* Doc. 25 at 5. The "ongoing violation" doctrine was created by courts to allow for tolling of the 300-day time period where "at least some of the conduct occurred within the 300 day period." *Johnson v. Milwaukee School of Engineering*, 258 F. Supp.2d 896, 901 (E.D. Wisc. 2003). The "ongoing violation" doctrine, like all equitable tolling doctrines, is to be applied sparingly. *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114-15 (2002). Here, plaintiff's allegations relate to various discrete actions of the City such as discriminatorily re-grading his exam, refusing to provide him leave time, and failing to reasonably accommodate his disability by providing him a high back chair. *See* Doc. 11, ¶¶ 25, 43, 80. Such discrete acts constitute separate actionable unlawful employment practices and are not the sort of serial conduct which justifies tolling the 300-day time period. *Cf. Morgan*, 536 U.S. at 115 (explaining that the sort of serial conduct to

---

[4]The exhaustion prerequisite is not jurisdictional; thus, the Court may consider whether the circumstances in this case support waiver of the requirement and whether plaintiff should be allowed to proceed with his time-barred allegations under the principles of equitable tolling or estoppel. *Parry*, 236 F.3d at 309. In the instant matter, plaintiff has presented no facts which support a finding that the exhaustion requirement should be waived.

7

which the "ongoing violation" doctrine applies involves "unlawful employment practice[s] . . . occur[ring] over a series of days or perhaps years and, in direct contrast to discrete acts, a single act of harassment may not be actionable on its own."). Accordingly, plaintiff's allegations of discrete instances of the City's "unlawful employment practices" are not subject to tolling under the "ongoing violation" doctrine.

In sum, any discrimination claims that pre-date November 29, 2010 are untimely and must be dismissed.

2. <u>Plaintiff's pre-September 23, 2011 retaliation claims are dismissed for failure to exhaust administrative remedies; plaintiff's post-September 23, 2011 retaliation claims survive.</u>

The City moves to dismiss plaintiff's retaliation claims arguing that plaintiff failed to exhaust his administrative remedies prior to filing his amended complaint. The City correctly notes that plaintiff did not check the retaliation box on his EEOC Charge of Discrimination, but marked only the boxes for race and disability discrimination. (Doc. 18 at 5-6, citing Doc. 18, Ex. 1). Plaintiff's discrimination charge states:

> I have been employed with [the City] since May 26, 1989, most recently as a Civil Engineer Technician II. Since January 2011 I have been denied reasonable accommodations for my disabilities. In about June 2011 one other Black employee and I were told to participate in an experiment for a software package. On September 14, 2011[,] I received a rating of "Does Not Meet" in the Quality of my Work.
>
> My repeated requests for an accommodation were denied. I was not given a legitimate business reason for the denial.
>
> I believe I have been discriminated against because of my race, Black, in violation of Title VII of the Civil Rights Act of 1964, as amended, and because of my disabilities in violation of the Americans with Disabilities Act.

(Doc. 18, Ex. 1).

"Federal courts do not have subject matter jurisdiction to hear Title VII claims unless the

8

claimant explicitly files the claim in an EEOC charge or the claim can reasonably be expected to grow out of the EEOC charge." *Abeita v. TransAmerica Mailings, Inc.*, 159 F.3d 246, 254 (6th Cir. 1998). There is an exception to this filing requirement for retaliation claims as they often occur after the filing of an EEOC charge. *Id.* But where the retaliation claim relates to conduct occurring prior to the filing of the EEOC charge, the exception does not apply. *Id. See also Ang v. Procter & Gamble Co.,* 932 F.2d 540, 547 (6th Cir. 1991) ("Retaliatory conduct occurring prior to the filing of the EEOC complaint is distinguishable from conduct occurring afterwards as no unnecessary double filing is required by demanding that plaintiffs allege retaliation in the original complaint.").

Plaintiff's amended complaint alleges that the City retaliated against him for: filing the EEOC charge and for his cooperation in an internal review aimed at job creation (Doc. 18, ¶¶ 135-36); objecting to what he believed to be discriminatory policies (*id.*, ¶¶ 138-46); requesting permission to work different hours to accommodate his disability (*id.*, ¶¶ 147-51); filing a grievance in late 2010 regarding back pay (*id.*, ¶¶ 152-60); and refusing to participate in an internal system evaluation. *Id.*, ¶¶ 161-63. Plaintiff alleges the City retaliated against him by giving him a negative performance evaluation to justify the withholding of back pay and by refusing to provide him with a high back chair or extra leave time to reasonably accommodate his disability. *Id.*, ¶¶ 151, 158-60, 173.

Plaintiff's amended complaint does not identify the specific dates the allegedly retaliatory conduct occurred. To the extent any of this allegedly retaliatory conduct occurred prior to September 23, 2011, the date the EEOC charge was filed, any retaliation claims based thereon must be dismissed for lack of subject matter jurisdiction as plaintiff's EEOC discrimination charge does not specifically allege unlawful retaliation. *Abeita,* 159 F.3d at 254. In addition, the Court

cannot plausibly infer a retaliation claim from the facts alleged in the EEOC charge, which are directed solely at race and disability discrimination. However, to the extent the allegations relate to conduct occurring after plaintiff filed his EEOC charge, plaintiff's retaliation claim survives despite his failure to "check" the accordant box on the EEOC document. *See Abeita*, 159 F.3d at 254-55.

3. Defendant's motion to dismiss plaintiff's "race" discrimination claims based on the negative performance review and requested participation in an internal system evaluation is denied.

The City moves to dismiss plaintiff's race discrimination claims arguing that plaintiff suffered no tangible adverse employment action as a result of the negative performance review or his refusal to participate in an internal system evaluation. (Doc. 18 at 8). The City's argument improperly conflates plaintiff's Title VII race discrimination claims with his retaliation claims.

The allegations referenced by the City are located in the "Count Four – Retaliation" section of plaintiff's complaint. (Doc. 11, ¶¶ 154-64). Specifically, plaintiff alleges that his receipt of a negative performance review "was clear retaliation . . . for filing the grievance" against the City. Plaintiff also alleges that the City retaliated against him for refusing to participate in the internal system evaluation. These allegations are clearly associated with plaintiff's retaliation and not race discrimination claims. Therefore, the City's motion to dismiss these claims for failure to state a claim of race discrimination is denied.

4. Plaintiff's allegations regarding Ms. Frey fail to state a Title VII claim for retaliation.

Plaintiff's amended complaint alleges that Ms. Frey discriminated against him on the basis of his race and retaliated against him for criticizing her suggestion to have a party for a City employee returning to work from military duty. *See* Doc. 11, ¶¶ 138-42. The City moves to dismiss plaintiff's claims related to Ms. Frey, noting that this portion of plaintiff's amended

10

complaint fails to allege that he was engaged in any constitutionally protected activity or that he was subject to an adverse employment action. Specifically, the City argues that plaintiff was not engaged in a protected activity when he objected to Ms. Frey's suggestion to have a party. The City further argues that plaintiff's amended complaint – which states simply that Ms. Frey treated him in a condescending manner – fails to allege any adverse employment action. The City's arguments are well-taken.

To state a claim for retaliation under Title VII, plaintiff must allege that (1) he engaged in a protected activity; (2) the exercise of the protected right was known to the City; (3) the City thereafter took adverse employment action; and (4) there was a causal connection between the protected activity and the adverse employment action. *See EEOC v. Avery Dennison Corp.*, 104 F.3d 858, 860 (6th Cir. 1997). Plaintiff's allegations involving Ms. Frey do not meet these criteria.

First, plaintiff has failed to allege that he engaged in a protected activity. A protected activity includes "oppos[ing] any practice made an unlawful employment practice by [Title VII]." *Niswander v. Cincinnati Ins. Co.*, 529 F.3d 714, 719 (6th Cir. 2008). The amended complaint states only that plaintiff told Ms. Frey that she should not celebrate a veteran's return to the office because "the City didn't acknowledge other veterans that had served in Iraq and this one hadn't." (Doc. 11, ¶ 140). Title VII contains no prohibition against employers celebrating the return of veteran employees to the work place. Thus, plaintiff has failed to allege that he engaged in a protected activity – a prerequisite to his Title VII claims.

Second, plaintiff's amended complaint fails to allege that he suffered an adverse employment action with respect to Ms. Frey. An adverse employment action is "a materially adverse change in the terms of [plaintiff's] employment." *Kocsis v. Multi-Care Mgmt.*, 97 F.3d 876, 885 (6th Cir. 1996). A "bruised ego" is not enough. *Id.* at 886 (citing *Flahery v. Gas*

11

*Research Inst.*, 31 F.3d 451, 456 (7th Cir. 1994)). Here, plaintiff has alleged that Ms. Frey treated him condescendingly by making him read aloud at a meeting based on her belief that he would fail at the exercise due to his race. (Doc. 11, ¶ 142). These allegations regarding Ms. Frey's apparently unsuccessful attempt to embarrass plaintiff do not constitute an adverse employment action. Accordingly, plaintiff's allegations regarding Ms. Frey fail to state a plausible claim for retaliation.

5. <u>Plaintiff's allegations regarding his union grievance state a Title VII claim for retaliation.</u>

The City further argues that insofar as plaintiff alleges the City retaliated against him for filing a grievance regarding back pay, his claims must be dismissed as filing "a union grievance that does not raise Title VII or other discriminatory issues does not constitute protected activity." (Doc. 18 at 9). The Sixth Circuit has held that grievances that are unrelated to claims of discrimination are not protected activity. *See Batuyong v. Gates*, 337 F. App'x 451, 456 (6th Cir. 2009). Thus, if plaintiff's grievances do not raise issues related to discrimination, then his grievances are not the type of activity protected by Title VII.

Plaintiff's amended complaint alleges:

- [Plaintiff] has filed grievances against the City with his union and with the EEOC because he did not receive transfer pay that he is entitled to get.

- [Plaintiff] filed a grievance with the EEOC because he felt he has been discriminated against for his race and disability.

- In 1997, [plaintiff] filed a grievance through his union to obtain transfer pay for his work done as a [Certified Engineering Technician 3] while working as a [Certified Engineering Technician 2].

- In 2009, [plaintiff] again filed a grievance and requested transfer pay for doing the work of a [Certified Engineering Technician 3] while being a [Certified Engineering Technician 2].

12

- Indeed, [plaintiff] has previously filed a grievance for transfer pay for working as a [Certified Engineering Technician 3] and received such pay.

- [Plaintiff] has filed grievances with his union, a [c]omplaint with the EEOC and voiced numerous complaints about being treated unfairly as well as unfair treatment of others.

- In or around the end of 2010 [plaintiff] filed a grievance against the City for transfer pay and back pay for doing work as a [Certified Engineering Technician 3].

- However, after [plaintiff] filed the grievance about doing the work of a [Certified Engineering Technician 3] and not receiving transfer pay and his supervisor agreed that he did, he received his first ever evaluation stating that his *Quality of Work* "Does Not Meet Expectations."

(Doc. 11, ¶¶ 19, 27, 98, 100, 115, 134, 152, 158). Liberally construed, plaintiff's amended complaint appears to assert that his grievances had dual purposes – to allege wrongful work practices *and* unlawful discrimination. At this juncture, the Court finds that plaintiff's grievance-based allegations state a facially plausible claim for retaliation.

6. Plaintiff's amended complaint fails to state a claim for intentional infliction of emotional distress.

Lastly, the City argues that plaintiff's amended complaint fails to state a claim for intentional infliction of emotional distress (IIED). The City contends that plaintiff has not alleged facts demonstrating that he has suffered serious emotional distress sufficient to support an IIED claim. The City argues that plaintiff's allegations that "he has been 'very stressed' and has suffered from 'stress and headaches and has suffered emotional trauma'" are insufficient to meet the threshold for serious emotional distress. (Doc. 18 at 10, citing Doc. 11, ¶¶ 178, 181, 184).

In response, plaintiff argues that he has stated a valid IIED claim, noting that the City's refusal to accommodate his disability and address his complaints of racial discrimination have caused him severe stress, weight loss, irritability, headaches, and being unable to complete a full work week. (Doc. 25 at 11).

13

The elements of a claim for intentional infliction of emotional distress are: "1) that the actor either intended to cause emotional distress or knew or should have known that actions taken would result in serious emotional distress to the plaintiff; 2) that the actor's conduct was so extreme and outrageous as to go beyond all possible bounds of decency and was such that it can be considered as utterly intolerable in a civilized community; 3) that the actor's actions were the proximate cause of plaintiff's psychic injury; and 4) that the mental anguish suffered by plaintiff is serious and of a nature that no reasonable man could be expected to endure it." *Pyle v. Pyle*, 463 N.E.2d 98, 103 (Ohio App. 8 Dist. 1983) (internal quotations and citations omitted).

The Court finds that plaintiff's amended complaint does not allege facts showing the type of serious mental anguish necessary to state a plausible IIED claim. Plaintiff simply alleges that he has suffered "stress and headaches . . . and has suffered emotional trauma as a direct and proximate cause" of the City's conduct. *Id.*, ¶ 184. The Ohio Supreme Court has held that "serious" emotional distress involves an "emotional injury which is both severe and debilitating. Thus, serious emotional distress may be found where a reasonable person, normally constituted, would be unable to cope adequately with the mental distress engendered by the circumstances of the case." *Paugh v. Hanks*, 451 N.E.2d 759, 761 (Ohio 1983). Here, plaintiff does not allege that his stress is debilitating or that he is unable to cope with his headaches and trauma. The undersigned therefore finds that plaintiff's amended complaint fails to allege the requisite mental injury to state a claim for IIED. Accordingly, plaintiff's IIED claim must be dismissed as a matter of law.

### IV. Conclusion

**IT IS HEREBY ORDERED THAT** the City's motion to dismiss (Doc. 18) is **GRANTED** in part and **DENIED** in part. Plaintiff's Title VII and ADA claims regarding the City's alleged conduct prior to November 29, 2010, are **DISMISSED**. Plaintiff's claims involving Ms. Frey are

**DISMISSED**. To the extent plaintiff's retaliation claim involves conduct preceding September 23, 2011, these allegations are **DISMISSED** for the reasons stated above. Plaintiff's state law claim for intentional infliction of emotional distress is **DISMISSED**. Plaintiff's remaining Title VII and ADA allegations survive the City's motion to dismiss.

Further, plaintiff's motion to strike the City's motion to dismiss (Doc. 25) is **DENIED**.

Date: 4/8/13

Karen L. Litkovitz
United States Magistrate Judge

| SENDER: COMPLETE THIS SECTION | COMPLETE THIS SECTION ON DELIVERY | | |
|---|---|---|---|
| ■ Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.<br>■ Print your name and address on the reverse so that we can return the card to you.<br>■ Attach this card to the back of the mailpiece, or on the front if space permits. | A. Signature<br>X | ☒ Agent<br>☐ Addressee | |
| | B. Received by (Printed Name) | C. Date of Delivery | |
| 1. Article Addressed to:<br><br>Kevin H. Longino<br>2193 Shasta Pl<br>Cincinnati, Ohio 45211 | D. Is delivery address different from item 1? ☐ Yes<br>If YES, enter delivery address below: ☐ No | | |
| | 3. Service Type<br>☒ Certified Mail ☐ Express Mail<br>☐ Registered ☐ Return Receipt for Merchandise<br>☐ Insured Mail ☐ C.O.D. | | |
| | 4. Restricted Delivery? (Extra Fee) | ☐ Yes | |
| 2. Article Number<br>(Transfer from service label) | 7011 3500 0001 5345 5451 | | |
| PS Form 3811, February 2004 | Domestic Return Receipt | 102595-02-M-1540 | |