UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

KEVIN H. LONGINO,                                    Case No. 1:12-cv-424
          Plaintiff,

                                                     Litkovitz, M.J.
     vs.
                                                     **ORDER**
CITY OF CINCINNATI,
          Defendant.

Plaintiff Kevin Longino brings this action pro se against defendant City of Cincinnati

(City) alleging that the City discriminated and retaliated against him on the basis of his race and

disability in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §

2000e *et seq.* (Title VII) and the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.*

(ADA). This matter is before the Court on the City's motion for summary judgment (Doc. 37),

plaintiff's response in opposition (Doc. 42), and the City's reply memorandum. (Doc. 46). For

the reasons set forth below, the City's motion for summary judgment is **GRANTED**.

**I.     Facts[1]**

The following undisputed facts are taken from plaintiff's amended complaint

and evidence submitted by the City in support of its summary judgment motion, including

plaintiff's deposition testimony, and the evidence submitted by plaintiff in opposition to the

motion for summary judgment.

Plaintiff is an African American male who has been employed by the City as a "Civil

Engineering Tech 2" (CET2) since 1989. (Doc. 11, ¶¶ 7, 106, Amended Complaint; Doc. 42, ¶

1, Plaintiff's Affidavit). In 2001, plaintiff was injured in an accident during work hours which

---

[1]On April 8, 2013, the undersigned entered an Order dismissing several of plaintiff's claims, including his
Title VII and ADA claims as they relate to events occurring prior to November 29, 2010, and his retaliation claim as
it relates to events occurring prior to September 23, 2011. (Doc. 40). Accordingly, the recitation of facts is limited
to events relevant to the remaining claims.

caused him to become disabled.  Doc. 42, ¶¶ 2-3.  Due to his injuries, plaintiff was transferred to a desk job with the Metropolitan Sewer District.  Doc. 11, ¶¶ 37, 42, 94.

At some point in 2006, plaintiff was permitted to enter into a "flex schedule" whereby he occasionally worked longer days so he could attend medical appointments during regular work hours.  *Id.*, ¶¶ 53-55; Doc. 42, ¶¶ 33, 36.  This "flex schedule" was memorialized in a "Memorandum of Understanding" (MOU).  Doc. 11, ¶ 54.[2]  *See also* Doc. 38, Ex. 23 and Doc. 42, Ex. G (unsigned copies of September 15, 2006 MOU).  The record contains meeting minutes from a September 2010 meeting between plaintiff and several City employees which reflect that plaintiff requested a flexible schedule similar to that agreed to in the 2006 MOU.  (Doc. 38, Ex. 24).  The record also includes a March 18, 2011 Quality Assurance Branch Agreement, similar to the above MOU, signed by plaintiff, his supervisor, and a City Superintendent permitting plaintiff to continue working a "flex schedule."  (Doc 38, Ex. 25; Doc. 42, Ex. J).  The 2011 MOU provides that the "agreement is contingent upon [plaintiff] providing documentation (Doctor's Note) to justify the need" for the "flex schedule."  *Id.*  Further, the MOU states that it is "in effect for a six month period following date of doctor's note, at which time another current note shall be provided or this agreement is null and void."  *Id.*  The record contains the most recent MOU between plaintiff and the City.  (Doc. 38, Ex. 32, December 19, 2012 MOU).  The December 2012 MOU does not include any provisions requiring plaintiff to provide doctor's notes for the MOU to be enforceable.  *Id.*

Plaintiff has filed multiple grievances through his union to obtain transfer pay based on his assertion that he has been performing the work of a CET3 while only receiving pay at a

---

[2]The parties do not dispute that plaintiff is a member of the American Federation of State, County and Municipal Employees (AFSCME) union.  Pursuant to the labor agreement between the AFSCME and the City, an MOU is necessary where a flex schedule is requested by a union member. *See* Doc. 42, Ex. E at 2, 14 (Labor Agreement).

CET2 level.  (Doc. 11, ¶¶ 98, 100; Doc. 42, ¶ 50).  Plaintiff's grievances were unsuccessful.

(Doc. 11, ¶¶ 99, 101; Doc. 42, ¶¶ 54-55).  *See also* Doc. 38, Exs. 8, 9 (2009 letters confirming

that plaintiff's 2009 request for transfer pay was denied).

In June 2011, plaintiff was asked to take part in a software "experiment" and plaintiff

declined.  (Doc. 11, ¶¶ 161-64; Doc. 38 at 29 (Plaintiff's Deposition)).  Plaintiff was among

several employees, including at least one Caucasian employee[3] and one African-American

employee, who were asked to participate in the "experiment."  (Doc. 38 at 29-41 (Plaintiff's

Deposition)).  In September 2011, plaintiff received a rating of "Does Not Meet Expectations" in

the category of "Quality of Work" in his annual performance review; plaintiff's overall

evaluation was "Meets Expectations."  (Doc. 11, ¶ 154; Doc. 38, Ex. 4, Annual Employee

Performance Evaluation; Doc. 42, ¶ 52).

At the close of discovery, the City moved for summary judgment on all of plaintiff's

remaining claims.  (Doc. 37).  The City argues it is entitled to judgment as a matter of law

because plaintiff cannot establish the prima facie elements for his race and disability

discrimination claims or his retaliation claim.

## II.    Summary Judgment Standard of Review

The Court "shall grant summary judgment if the movant shows that there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed.

R. Civ. P. 56(a).  An assertion of a undisputed fact must be supported by citations to particular

parts of the record, including depositions, affidavits, admissions, and interrogatory answers.  The

party opposing a properly supported summary judgment motion "'may not rest upon the mere

---

[3]The record is unclear as to how many Caucasian individuals were asked to participate in the software "experiment."  *Compare* Doc. 38 at 29 (plaintiff testified that Shawn Hall, an Africa-American employee, was involved in the experiment) *and* Doc. 38, Ex. 3 (the City's response to plaintiff's discrimination charge states that Shawn Hall is Caucasian).

allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial.'" *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (internal quotation omitted).

The Court is not duty bound to search the entire record in an effort to establish a lack of material facts. *Guarino v. Brookfield Township Trs.*, 980 F.2d 399, 404 (6th Cir. 1992). Rather, the burden is on the non-moving party to "present affirmative evidence to defeat a properly supported motion for summary judgment," *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989), and to designate specific facts in dispute. *Anderson*, 477 U.S. at 250. The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Ind. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The Court construes the evidence presented in the light most favorable to the non-movant and draws all justifiable inferences in the non-movant's favor. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

The Court's function is not to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249. The Court must assess "whether there is the need for trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Id.* at 250. "If the evidence is merely colorable, . . . or is not significantly probative, . . . the court may grant judgment." *Anderson,* 477 U.S. at 249-50 (citations omitted).

**III.    Analysis**

At the outset, the Court notes that pursuant to its April 8, 2013 Order, plaintiff's Title VII and ADA claims are limited to events occurring after November 29, 2010, and plaintiff's

retaliation claim is limited to events occurring after September 23, 2011. *See* Doc. 40. Accordingly, only acts occurring after these dates are relevant to the Court's analysis. The undersigned will first address plaintiff's disability discrimination claim.

A. Disability Discrimination

The ADA prohibits an employer from discriminating against a "qualified individual" on the basis of a disability. 42 U.S.C. § 12112(a); *McKay v. Toyota Motor Mfg., U.S.A., Inc.*, 110 F.3d 369, 371 (6th Cir. 1997). A "qualified individual" with a disability is someone who "satisfies the requisite skill, experience, education and other job-related requirements of the employment position such individual holds or desires and who, with or without reasonable accommodation, can perform the essential functions of such position." 29 C.F.R. § 1630.2(m). The federal regulations define "essential functions" as the fundamental job duties of the employment position. 29 C.F.R. § 1630.2(n)(1). Whether a particular function is essential is a factual determination which must be made on a case-by-case basis. *Hoskins v. Oakland Cty. Sheriff's Dep't*, 227 F.3d 719, 726 (6th Cir. 2000) (citations omitted). An employer is permitted to exercise its business judgment in establishing performance standards and in determining whether an individual can meet its standards, "whether qualitative or quantitative." 29 C.F.R. Pt. 1630, Appendix to § 1630.2(n).

The ADA defines "discrimination" as including "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability." 42 U.S.C. § 12112(b)(5)(A). The Act defines "reasonable accommodation" to include:

> (A) making existing facilities used by employees readily accessible to and usable by individuals with disabilities; and

5

(B) job restructuring, part-time or modified work schedules, reassignment to a vacant position, acquisition or modification of equipment or devices, appropriate adjustment or modifications of examinations, training materials or policies, the provision of qualified readers or interpreters, and other similar accommodations for individuals with disabilities.

42 U.S.C. § 12111(9).

To prevail on his failure to accommodate claim, plaintiff must demonstrate that: (1) he has a disability; (2) he was qualified for the job; and (3) he was denied a reasonable accommodation for his disability. *Roush v. Weastec, Inc.*, 96 F.3d 840, 843 (6th Cir. 1996). Plaintiff bears the burden of showing that a reasonable accommodation is possible and that he is qualified for the position with the accommodation. *Hoskins*, 227 F.3d at 728.  Here, the parties do not dispute that plaintiff is disabled within the meaning of the ADA.  Nor do they dispute that plaintiff is qualified for the position of CET2.  However, the parties disagree as to whether plaintiff was denied reasonable accommodations.

Plaintiff's ADA claim is based upon the City's purported failure to accommodate his disability by: (1) not providing him a high back chair; (2) not permitting him to work a flexible schedule; and (3) improperly requesting medical documentation to substantiate his requests.  The City asserts that plaintiff's ADA claim fails as a matter of law because there is no evidence supporting his claim that he made requests for these accommodations.  The City also contends that an employer may request medical verification supporting requested accommodations without violating the ADA.

The Court will first address plaintiff's claim that the City violated the ADA by refusing to accommodate his reasonable request for a high back chair.  The amended complaint alleges that plaintiff requested a high back chair and was permitted to pick out a chair which the City ordered, but that the chair was given to another employee upon delivery. (Doc. 11, ¶¶ 78-80).

6

Plaintiff further alleges that even after the employee left the City's employ, he was denied use of the chair. *Id.*, ¶ 82. Plaintiff's amended complaint fails to set forth a time frame indicating when plaintiff requested the chair or when the City allegedly ordered the chair he selected.

At his deposition, plaintiff testified that his initial request for a chair was made in 2000. (Doc. 38 at 204 (Plaintiff's Deposition)). Despite the allegations in the amended complaint that "his" chair was given to another person, plaintiff testified that the City never ordered him a chair, but that he used another employee's chair to his satisfaction until his office moved in 2009 or 2010. *Id.* Following the move, plaintiff's chair went missing at which point he "found" a chair that belonged to another City employee. *Id.* at 205-06. That employee, Mr. Bob Mertz, permitted plaintiff to keep the chair and ordered another for himself. *Id.* at 206-07. The chair ordered by Mertz was virtually identical to the chair kept by plaintiff. *Id.* at 208-09.

In the affidavit submitted by plaintiff subsequent to his deposition, plaintiff attests that he told his supervisor, Tom Ludwig, about his need for the high back chair. However, plaintiff does not state when he made this request. *Id.* Doc. 42 at 19. Plaintiff also generally states that he has continuously requested a high back chair and was not provided with one until April 2013. *Id.*

After this lawsuit was filed, plaintiff made his first written request for a special chair on December 22, 2012. *See* Doc. 37, Ex. 2, ¶ 6 (Affidavit of Dianne Nelson, Senior Administrative Specialist, Human Resources Liaison for MSD's Engineering Division). His personnel file does not contain any other requests for an accommodation in the form of a high back chair. *Id.*

Given the conclusory and non-specific nature of plaintiff's affidavit and amended complaint, the undersigned is unable to discern when any of the events plaintiff describes occurred.[4] Because plaintiff's ADA claims are limited to events occurring after November 29,

---

[4]In his affidavit, plaintiff attests he "was told [the chair] was ordered for [him] and given to another employee." (Doc. 42, ¶ 7). However, this statement is inadmissible hearsay evidence. Hearsay is an out-of-court

7

2010 (Doc. 40 at 4-8), in the absence of any evidence establishing that plaintiff made a request for an accommodation for a high back chair *after* this date (with the exception of his one written request in 2012 that was granted by the City), plaintiff's affidavit evidence fails to create a genuine issue of fact for trial on this claim.

Moreover, plaintiff's amended complaint, affidavit, and deposition testimony are inconsistent. Plaintiff's amended complaint and affidavit state that the City ordered a special chair for him, but gave it to another employee, while he testified at his deposition that a special chair was never ordered for him and he used other employees' chairs to his satisfaction. Plaintiff cannot create a factual issue by filing an affidavit which contradicts his earlier deposition testimony. *See Lanier v. Bryant*, 332 F.3d 999, 1004 (6th Cir. 2003) (citing *United States ex rel. Compton v. Midwest Specialties, Inc.*, 142 F.3d 296, 303 (6th Cir. 1998); *Dotson v. United States Postal Serv.*, 977 F.2d 976, 978 (6th Cir. 1992)). To the extent plaintiff relies on the vague and conclusory allegations contained in either his affidavit or complaint, these are insufficient to create a genuine issue of material fact on summary judgment. *See McDonald v. Union Camp Corp.*, 898 F.2d 1155, 1162 (6th Cir. 1990) (conclusory allegations are not sufficient to defeat a properly supported summary judgment motion).

Plaintiff has failed to submit evidence creating a genuine issue of fact that he made a request for a reasonable accommodation in the form of a high back chair subsequent to November 29, 2010 (other than the request made after this lawsuit was filed), or that the City

---

statement made by someone other than the declarant which is offered as evidence "to prove the truth of the matter asserted in a statement." Fed. R. Evid. 801(c). The statement in question involves statements made by some unidentified third party to plaintiff. Plaintiff cites to the statements in order to proffer them as evidence as proof of the matter asserted – that the City gave a chair ordered for plaintiff to someone else. Plaintiff may not use this hearsay evidence to create a genuine issue of fact on summary judgment. *Alpert v. U.S.*, 481 F.3d 404, 409 (6th Cir. 2007) ("Evidence submitted in opposition to a motion for summary judgment must be admissible. Hearsay evidence . . . must be disregarded.") (internal citations omitted). Plaintiff has failed to assert that the proffered statement is admissible under any exception to the hearsay bar. Therefore, the Court may not consider this evidence in deciding the instant motion.

denied any such request. The City's motion for summary judgment is therefore granted on this claim.

Next, plaintiff alleges that he requires a flexible work schedule to attend ongoing physical therapy and medical appointments due to his disability. (Doc. 11, ¶¶ 38-39). Plaintiff claims the City "refused to give him paid time off although he requested such time in order to attend to his injury." *Id.*, ¶ 43. Plaintiff further asserts the "ADA allows for paid time off as a reasonable accommodation for a disability." *Id.*, ¶ 44. Plaintiff concedes that the City entered into a MOU permitting him to work a flexible work schedule at some point in 2006, but states that the City later discontinued the MOU and impermissibly required plaintiff to provide medical documentation of his disability in order to reinstate the MOU. *Id.*, ¶¶ 53-71.

The City moves for summary judgment on plaintiff's "flex schedule" claims arguing that the City entered into several agreements with plaintiff that allowed him to work a flexible schedule to accommodate his therapy and medical appointments without losing pay or using sick leave. The City also asserts that it was not aware that plaintiff was dissatisfied with his current schedule until after this lawsuit was filed, which prompted the entry of the December 19, 2012 MOU. *See* Doc. 38, Ex. 32 (December 19, 2012 MOU). The City also asserts that the ADA does not require employers to provide paid time off as an ADA accommodation and the ADA permits employers to request medical documentation of an employee's need for time off. The City's arguments are well-taken.

First, plaintiff's claim that the ADA requires employers to provide paid time off as a reasonable accommodation, *see* Doc. 11, ¶¶ 44, is unsubstantiated. Plaintiff does not dispute the City's arguments in his brief in opposition to its motion for summary judgment. Plaintiff's failure to address this argument in his responsive brief constitutes waiver or abandonment of the

9

claim. *See Posthumus v. Bd. of Educ. of Mona Shores Public Schools*, 380 F. Supp.2d 891, 902 (W.D. Mich. 2005) (citing *Ortiz v. Gaston Cty. Dyeing Mach. Co.*, 277 F.3d 594, 597 (1st Cir. 2002); *Laborers' Int'l Union of N. Am. v. Caruso*, 197 F.3d 1195, 1197 (7th Cir. 1999)). Moreover, plaintiff's assertion is inconsistent with Sixth Circuit precedent which provides that *unpaid* leave for a discrete period of time qualifies as a reasonable accommodation. *See Walsh v. United Parcel Serv.*, 201 F.3d 718, 727-28 (6th Cir. 2000). The Court is not aware of any legal authority, nor has plaintiff identified any, which supports his contrary allegation that he is entitled to *paid* leave under the ADA. Accordingly, to the extent plaintiff's ADA claim is premised upon the City's refusal to provide him paid leave, summary judgment is granted for the City.

Second, insofar as plaintiff claims the City violated the ADA by requesting medical documentation supporting his request for a "flex schedule," plaintiff is incorrect.[5] The ADA prohibits employers from requiring employees to undergo a medical examination, asking whether an employee is disabled, or asking about "the nature or severity of the disability . . . ." 42 U.S.C. § 12112(d)(4)(A). However, the ADA "permits employers . . . to make inquiries or require medical examinations necessary to the reasonable accommodation process . . . ." 29 C.F.R. § 1630.14(c). As noted by the Sixth Circuit, the ADA not only permits but encourages such communication in order to ensure that proper accommodations are available to disabled employees:

> [E]mployer[s] need not take the employee's word for it that the employee has an illness that may require special accommodation. Instead, the employer has the ability to confirm or disprove the employee's statement. If this were not the case, every employee could claim a disability warranting special accommodation yet deny the employer the opportunity to confirm whether a need for the accommodation exists. We believe the purpose of the ADA was not to create

---

[5]The City does not dispute that it requested medical verification from plaintiff to support his request for a flexible work schedule. *See* Doc. 37, Ex. 2, ¶ 7 (Nelson Affidavit).

impediments for such employer-employee co-operation, but to promote an interactive dialogue between an employer and employee to discover to what extent the employee is disabled and how the employee may be accommodated, if at all, in the workplace.

*E.E.O.C. v. Prevo's Family Market, Inc.*, 135 F.3d 1089, 1094-95 (6th Cir. 1998). Therefore, the City's request for medical verification of plaintiff's need for a flexible work schedule to attend medical appointments does not violate the ADA.

Lastly, the crux of plaintiff's ADA claim is that the City has refused to accommodate his disability by refusing his request for a flexible work schedule so that he can attend physical therapy and medical appointments without using sick leave or incurring lost wages. *See* Doc. 11, ¶¶ 43-63. The City moves for summary judgment on this claim asserting that plaintiff cannot make the necessary prima facie showing that the City refused to accommodate him or made an adverse employment decision affecting plaintiff on the basis of his disability. (Doc. 37 at 9). In support, the City presents evidence that plaintiff was repeatedly permitted to utilize a flexible work schedule as demonstrated by various MOUs. *See* Doc. 38, Exs. 25, 32 (2011 and 2012 MOUs providing that plaintiff is permitted to work flexible schedules to attend medical appointments); Doc. 42, Ex. O (2010 MOUs providing same); Doc. 37, Ex. 2, ¶ 7 (Ms. Nelson attested that the City entered into MOUs with plaintiff in 2011).

In his brief in opposition, plaintiff provides no evidence whatsoever controverting the City's evidence that multiple MOUs existed in order to accommodate plaintiff's request for a flexible work schedule. Indeed, plaintiff's affidavit includes statements that these MOUs existed during the relevant time period. (Doc. 42 at 20-21). Rather than citing to evidence which creates a genuine issue of material fact on this score, plaintiff simply reiterates his argument that the City's request for medical verification in order to continue the MOUs violates the ADA. As discussed above, employers are permitted to verify an employee's accommodation request.

11

*Prevo's Family Market*, 135 F.3d at 1094-95. Plaintiff's reliance on the City's request for medical verification in support of his ADA claim is therefore misplaced. As the record is devoid of any evidence demonstrating that the City refused plaintiff's accommodation request and the only uncontroverted evidence provided by the City demonstrates that it has continually worked with plaintiff to provide him a flexible work schedule, the undersigned finds that plaintiff has failed to establish a requisite element of his ADA claim and the City is entitled to summary judgment.

     B. Race Discrimination

     Title VII provides that "[i]t shall be an unlawful employment practice for an employer to . . . discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race. . . ." 42 U.S.C. § 2000e–2(a). A plaintiff may establish a discrimination claim by either direct or circumstantial evidence. *Younis v. Pinnacle Airlines, Inc.*, 610 F.3d 359, 363 (6th Cir. 2010). "Direct evidence of discrimination is 'that evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions.'" *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 570 (6th Cir. 2003) (en banc). "Circumstantial evidence, on the other hand, is proof that does not on its face establish discriminatory animus, but does allow a factfinder to draw a reasonable inference that discrimination occurred." *Id.*

     A plaintiff who lacks direct evidence of discrimination may establish a prima facie case of discrimination through circumstantial evidence by showing that: 1) he is a member of a protected class; 2) he suffered an adverse employment action; 3) he was qualified for the position lost or not gained; and 4) he was replaced by an individual outside the protected class. *Mitchell*

12

*v. Toledo Hospital*, 964 F.2d 577, 582 (6th Cir. 1992). Plaintiff may also establish the fourth prong of a prima facie case of discrimination by showing that he was treated less favorably than a similarly-situated individual outside the protected class. *See Clayton v. Meijer, Inc.*, 281 F.3d 605, 610 (6th Cir. 2002).

If the plaintiff establishes a prima facie case, the employer can overcome the prima facie case by articulating a legitimate, nondiscriminatory reason for the adverse employment action. *McDonnell Douglas,* 411 U.S. at 802. If the employer carries its burden, the plaintiff must show that the reasons offered by the employer were not its true reasons but were a pretext for discrimination. *Id.* at 804.

The City moves for summary judgment on plaintiff's race discrimination claim asserting that plaintiff cannot establish a prima facie discrimination case as there is no evidence demonstrating that he suffered an adverse employment action. (Doc. 37 at 14). At the outset, the undersigned notes that plaintiff has not responded to the City's motion as it concerns his race discrimination claim. It is therefore appropriate to grant the City's summary judgment motion on this basis alone, as it appears that plaintiff has waived or abandoned the claim. *Posthumus*, 380 F. Supp.2d at 902. However, as the record contains sufficient evidence to resolve this claim on the merits, the Court will address the City's argument rather than decide the matter solely on a procedural ground.

Plaintiff's amended complaint includes allegations that he was discriminated against on the basis of his race because, *inter alia*, the City: (1) re-graded a promotional exam that plaintiff initially passed but failed upon re-grading; (2) refused to pay him transfer pay for doing the work of a CET3; and (3) discriminated against him by requesting that he partake in the software "experiment." (Doc. 11, ¶¶ 112-126, 161-63). Plaintiff's own allegations and other evidence of

13

record demonstrate that the promotional testing and re-grading occurred in 2004. *See* Doc. 11, ¶ 117; Doc. 38, Ex. 20 (November 29, 2004 letter from plaintiff to the City appealing the re-grading). As this Court has previously determined that plaintiff's Title VII discrimination claim is limited to events occurring after November 29, 2010, *see* Doc. 40, these allegations cannot form the basis of a Title VII claim. Consequently, the only remaining issue is whether the City's purported refusal to grant plaintiff transfer pay and the City's request for his participation in the software "experiment" constitute adverse employment actions.

Regarding the transfer pay issue, the only evidence pertaining to events after November 29, 2010 is plaintiff's affidavit in which he attests he has not received CET3 (Civil Engineering Tech 3) pay despite working at that level for years. (Doc. 42 at 22). Notably, plaintiff's affidavit includes no statement whatsoever with regard to race discrimination. As plaintiff's vague, unsupported, and self-serving affidavit is insufficient to prove his allegations of race discrimination, summary judgment in favor of the City is appropriate.[6] *Wolfe v. Village of Brice, Ohio,* 37 F. Supp.2d 1021, 1026 (S.D. Ohio 1999).

Plaintiff's claim that the City wrongfully discriminated against him on the basis of race by requesting that he participate in the software "experiment" fairs no better. Plaintiff alleges that "[o]nly blacks were asked to participate in the 'experiment.'" (Doc. 11, ¶ 162). However, plaintiff testified at his deposition that a Caucasian employee was also asked to participate. (Doc. 38 at 34 (Plaintiff's Deposition)). While plaintiff further testified that this Caucasian

---

[6]The Court is further persuaded that this is the proper outcome given evidence proffered by the City which demonstrates that plaintiff's request for transfer pay was not denied on the basis of his race but, rather, because the City determined in 2009 that plaintiff was not performing the work of a CET3 and was not entitled to transfer pay. *See* Doc. 38, Exs. 8, 9). The City has thus articulated a legitimate, nondiscriminatory reason for plaintiff not receiving transfer pay and plaintiff has failed to present probative evidence sufficient to rebut the City's legitimate nondiscriminatory reason. Accordingly, plaintiff has failed to present evidence that creates a genuine issue of fact as to whether the reason offered by the City was its true reason for denying plaintiff's request for transfer pay thus entitling the City to summary judgment. *McDonnell Douglas,* 411 U.S. at 804.

14

employee was included only after he refused to participate, this is a distinction without a difference.

Plaintiff has presented no direct or circumstantial demonstrating that he was treated less favorably than individuals outside of his protected class by virtue of being asked to participate in the software "experiment." Rather, the uncontroverted evidence of record demonstrates that both African American and Caucasian employees were asked to engage in the task. Insofar as plaintiff's claim is based on his subjective belief that he was chosen to participate in the "experiment" because of his race, such "subjective beliefs . . . are wholly insufficient evidence to establish a claim of discrimination as a matter of law." *Mitchell*, 964 F.2d at 585. *See also Carson v. Ford Motor Co.*, 413 F. App'x 820, 824 (6th Cir. 2011). As plaintiff has not introduced evidence establishing the third prong of his racial discrimination claim regarding his software "experiment" allegations, summary judgment is granted in favor of the City.

Moreover, plaintiff has provided no evidence demonstrating that his subsequent performance review qualifies as an adverse employment action. Plaintiff testified that he declined to participate in the "experiment" in June 2011 and the following September he received a rating of "Does Not Meet Expectations" in the "Quality of Work" section of his annual performance review. (Doc. 38 at 29, 43 (Plaintiff's Deposition)). *See also* Doc. 38, Ex. 4 (2011 Annual Review). Plaintiff received a rating of "Meets Expectations" in all other areas of the review, including an overall rating of "Meets Expectations." (Doc. 38, Ex. 4). There is no evidence suggesting that plaintiff lost pay or was disciplined as a result of the annual review. As to his "Quality of Work," the lower rating is accompanied by the following narrative:

> [Plaintiff] responsively works with his supervisor to meet pressing needs and project schedules. Accuracy, completeness, and good form of the initial drawings needs improving though. It would help to improve the quality of the drawings (1) if the data was more accurately shown during the initial stages, (2) if the initial

drawings were more complete per the drawing standards, and (3) if they had a more uniform, clean and neat appearance. He could improve by proofreading better before submitting for review. Also could improve by keeping a neat and well laid-out finished drawing on hand and modeling the current drawings after it.

*Id.*

The Sixth Circuit has held that "a negative performance evaluation does not constitute an adverse employment action unless the evaluation has an adverse impact on an employee's wages or salary." *Tuttle v. Metro. Gov't of Nashville,* 474 F.3d 307, 322 (6th Cir. 2007). *See also Holt v. Morgan,* 79 F. App'x 139, 141 (6th Cir. 2003) (unpublished); *Primes v. Reno,* 190 F.3d 765, 767 (6th Cir. 1999); *Hollins v. Atlantic Co., Inc.,* 188 F.3d 652, 662 (6th Cir. 1999). Accordingly, "to characterize a negative performance evaluation as an adverse employment action the plaintiff must point to a tangible employment action that [he] alleges [he] suffered, or is in jeopardy of suffering, because of the downgraded evaluation." *White v. Baxter Healthcare Corp.*, 533 F.3d 381, 402 (6th Cir. 2008) (internal quotations and citations omitted).

Plaintiff has introduced no evidence that he has suffered an adverse employment action or a loss of salary as a result of the 2011 review. Further, as the overall review was satisfactory, the lowered rating in one area does not constitute an adverse employment action. *Hollins*, 188 F.3d at 662. As plaintiff has not proffered evidence demonstrating that he suffered an adverse employment action, he has not established a necessary element of his race discrimination claim.

The Court concludes that plaintiff has failed to create a genuine issue of material fact as to whether he suffered an adverse employment action or was treated less favorably than similarly situated individuals. Thus, he cannot establish a prima facie case of race discrimination. Plaintiff has failed to rebut any of the City's evidence or arguments regarding his discrimination claim. Accordingly, the City is entitled to summary judgment on plaintiff's claims of race discrimination.

16

C. Retaliation

In order to establish a prima facie case of retaliation, a plaintiff must establish that: 1) he engaged in activity protected by the discrimination statutes; 2) the exercise of his protected activity was known to the defendant; 3) thereafter, the defendant took an employment action adverse to the plaintiff; and 4) there was a causal connection between the protected activity and the adverse employment action. *See Harrison v. Metro. Gov't of Nashville,* 80 F.3d 1107, 1118 (6th Cir. 1996), *overruled on other grounds as recognized by Jackson v. Quanex Corp.,* 191 F.3d 647, 667 (6th Cir. 1999). To establish the causal connection required by the fourth prong, plaintiff must produce sufficient evidence from which an inference could be drawn that the adverse action would not have been taken had the plaintiff not participated in protected activity. *See EEOC v. Avery Dennison Corp.*, 104 F.3d 858, 861 (6th Cir. 1997); *Jackson v. RKO Bottlers of Toledo, Inc.*, 743 F.2d 370, 377 (6th Cir. 1984).

Once the plaintiff establishes a prima facie case of retaliation, the burden shifts to the defendant to proffer a legitimate, non-retaliatory reason for the adverse employment action. *Manzer v. Diamond Shamrock Chemicals Co.*, 29 F.3d 1078, 1082 (6th Cir. 1994). If the defendant meets its burden of production, the burden shifts back to the plaintiff to show that the reasons proffered by the defendant are a pretext for retaliation. *Id.* However, the burden of persuasion remains with the plaintiff at all times. *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 511 (1993).

The City argues plaintiff cannot establish a prima facie case of retaliation because he did not engage in lawfully protected activity, did not suffer an adverse employment action, and cannot establish a causal connection between the purported protected activity and adverse action. In response, plaintiff argues that: (1) requesting an accommodation for his disability is

17

considered a protected activity under Title VII; (2) the City's "scrutiny" of plaintiff is an adverse action as it would dissuade a reasonable person from engaging in the protected activity; and (3) plaintiff's amended complaint "is replete with adverse actions taken by the [City] after [plaintiff] requested reasonable accommodations for his disability. . . ." (Doc. 42 at 12-13).

Though the parties dispute whether plaintiff engaged in a protected activity, either by requesting a reasonable accommodation or filing claims with his union for transfer pay, whether or not plaintiff has established this prong of his prima facie case is irrelevant given that plaintiff has failed to establish that he suffered an adverse employment action. Plaintiff argues that the following actions by the City constitute adverse actions: (1) denying plaintiff the benefit of a flexible schedule; (2) requesting a doctor's note; (3) not receiving a pay raise or transfer pay; and (4) improperly scrutinizing him.[7] (Doc. 42 at 12-13). However, the undisputed evidence shows plaintiff suffered no adverse employment action.

First, the City has entered into multiple agreements with plaintiff permitting him to work on a flexible schedule. *See* Doc. 38, Exs. 23, 25, 32; Doc. 42, Ex. O; Doc. 37, Ex. 2, ¶ 7. Given that the uncontroverted evidence establishes the existence of an agreement between plaintiff and the City for flexible work hours, the Court finds there is no adverse employment action in this regard. Second, as discussed above, the City is permitted under the ADA to request medical documentation supporting plaintiff's request for accommodation. *Prevo's Family Market*, 135 F.3d at 1094-95. Accordingly, the City's request for a doctor's note is not an adverse employment action for Title VII purposes. Third, the evidence of record demonstrates that plaintiff has received numerous cost-of-living pay raises throughout his tenure with the City. (Doc. 38, Ex. 30). Plaintiff testified that that he has received these raises but stated that these

---

[7]To the extent plaintiff relies on the 2011 performance review rating as an adverse action, as discussed above, a lowered rating on a performance review does not constitute an adverse action where the overall review was

18

"don't count." (Doc. 38 at 277-79 (Plaintiff's Deposition)). Regardless of plaintiff's opinion, the undisputed evidence before the Court demonstrates he has received multiple raises throughout his employment with the City. Consequently, plaintiff cannot establish an adverse action in support of his retaliation claim based on a lack of pay raises. Further, plaintiff has failed to provide evidence that he did not receive transfer pay in retaliation for engaging in protected activity. *Wolfe*, 37 F.Supp.2d at 1026. Lastly, plaintiff's conclusory and unsupported argument that he has been scrutinized for engaging in protected activity is insufficient to establish a genuine issue of material fact. *See Mitchell*, 964 F.2d at 585. As plaintiff does not show he suffered an adverse employment action, he fails to establish a prima facie case of Title VII retaliation.

The undersigned finds that plaintiff has failed to put forth evidence demonstrating that there is a genuine issue of material fact as to his retaliation claim. Plaintiff has not supported his allegations with admissible evidence and the record evidence flatly contradicts many of plaintiff's assertions. Accordingly, the City is entitled to summary judgment on plaintiff's retaliation claim.

## IV.    Conclusion

In conclusion, the City's motion for summary judgment (Doc. 37) is **GRANTED**. This action is **DISMISSED** on the docket of the Court.

**IT IS SO ORDERED.**

6/4/2013
Date

Karen L. Litkovitz
United States Magistrate Judge

---

satisfactory. *See Hollins*, 188 F.3d at 662.

**SENDER: COMPLETE THIS SECTION**

■ Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
■ Print your name and address on the reverse so that we can return the card to you.
■ Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Kevin H. Longino PC
2193 Shasta PL
Cinty, OH 45211

**COMPLETE THIS SECTION ON**

A. Signature

X ☐ Agent
☐ Addressee

B. Received by ( Printed Name)     C. Date of Delivery

X

D. Is delivery address different from item 1? ☐ Yes
If YES, enter delivery address below:     ☐ No

3. Service Type
☐ Certified Mail      ☐ Express Mail
☐ Registered          ☐ Return Receipt for Merchandise
☐ Insured Mail        ☐ C.O.D.
4. Restricted Delivery? (Extra Fee)     ☐ Yes

2. Article Number
(Transfer from service label)

7002 3150 0000 8389 9630

PS Form 3811, January 2004     Domestic Return Receipt     102595-02-M-1540